IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MALIA ARCIERO, ET AL. , | ) | CIVIL 14-00506 LEK-BMK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ERIC HOLDER, JR., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON
THE PLEADINGS, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT**

On May 8, 2015, Defendants Eric Holder, Jr., in his

capacity as United States Attorney General, Charles E. Samuels,

Jr., in his official capacity as Director of the United States

Bureau of Prisons, J. Ray Ormond, in his official capacity as

Warden of the Honolulu Federal Detention Center, and Florence T.

Nakakuni, in her official capacity as United States Attorney for

the District of Hawai`i (collectively "Defendants") filed

Defendants' Motion for Judgment on the Pleadings, or in the

Alternative, Summary Judgment ("Motion"). [Dkt. no. 20.]  On

August 28, 2015, Plaintiffs Malia Arciero,[1] Alan Mapuatuli,

Gilbert Medina, and Gary Victor Dubin (collectively "Plaintiffs")

filed a memorandum in opposition.  [Dkt. no. 38.]  Defendants

filed a reply on September 3, 2015.  [Dkt. no. 40.]  This matter

_____

[1] On August 13, 2015, this Court approved the parties'
Stipulation to Dismiss Plaintiff Malia Arciero as a Party to this
Action, dismissing Plaintiff Arciero's claims.  [Dkt. no. 25.]

came on for hearing on September 15, 2015.  After careful

consideration of the Motion, supporting and opposing memoranda,

arguments of counsel, and relevant legal authority, Defendants'

Motion is HEREBY GRANTED for the reasons set forth below.

## BACKGROUND

In 2005, the Bureau of Prisons ("BOP") started a

project called Trust Fund Limited Inmate Computer System

("TRULINCS"), that allows inmates to communicate with the public

via email.  [Motion, Decl. of Kathleen D. Jenkins, Chief, Trust

Fund Branch ("Jenkins Decl.") at ¶¶ 2-3.[2]]  Emails from TRULINCS

can only be retrieved through a program called "CorrLinks."  [Id.

at ¶ 2.]  Since 2010, every time an inmate uses TRULINCS, he or

she is met with the "TRULINCS Inmate Acknowledgment" page

("Inmate Acknowledgment").  [Id. at ¶ 6, Exh. A.]  The first two

paragraphs of the Inmate Acknowledgment inform the user, in

relevant part:

> Warning:        This computer system is the
>                 property of the United States
>                 Department of Justice.  The
>                 Department may monitor any
>                 activity on the system and
>                 search and retrieve any
>                 information stored within the
>                 system.  By accessing and
>                 using this computer, I am
>                 consenting to such monitoring
>                 and information retrieval for

---

[2] Kathleen D. Jenkins is the Chief of the Trust Fund Branch
of the Administration Division of BOP.  The Trust Fund Branch
"implements and manages" TRULINCS.  [Jenkins Decl. at ¶ 1.]

law enforcement and other
purposes.  I have no
expectation of privacy as to
any communication on or
information stored within the
system.

Responsibility:   I must abide by all terms
prescribed in Bureau of
Prisons' policy regarding my
use of TRULINCS and electronic
messaging systems, which I
acknowledge having read and
understood.  I understand and
consent to having my
electronic messages and system
activity monitored, read, and
retained by authorized
personnel.  I understand and
consent that this provision
applies to electronic messages
both to and from my attorney
or other legal representative,
and that such electronic
messages will not be treated
as privileged communications,
and that I have alternative
methods of conducting
privileged legal
communication. . . .

[Id., Exh. A.]  An inmate must click "I Accept" to get past this

screen and gain access to TRULINCS.  [Id. at ¶ 9.]

Similar to TRULINCS, CorrLinks requires users to agree

to Terms and Conditions of Service ("Terms and Conditions").

[Id. at ¶ 10, Exh. B.]  The Terms and Conditions state that the

program "is a way for family and friends to communicate with

their loved ones incarcerated in prison."  [Id., Exh. B. at 1.]

In a section titled "Monitoring," states:

3

> CorrLinks service staff may access content on the service, including any messages sent or received via the service. All information and content about messages sent and received using CorrLinks are accessible for review and/or download by Agency or their assignees responsible for the particular inmate. By using CorrLinks services you are at least eighteen years old, and expressly agree to the monitoring and review of all messages sent and received via this service by CorrLinks staff, and the applicable correctional agency and its staff, contractors, and agents.

[Id. at 2.]

Inmates may only correspond with approved contacts. [Jenkins Decl. at ¶ 11.] Once approved, contacts are notified that, "[b]y approving electronic correspondence with federal prisoners, you consent to have the Bureau of Prisons staff monitor the content of all electronic messages exchanged." [Id. at ¶¶ 13-14, Exh. C.] Finally, every time an approved contact reads an email in CorrLinks, text below the inmate's message reminds the reader that, "[b]y utilizing CorrLinks to send or receive messages you consent to have Bureau of Prisons staff monitor the informational content of all electronic messages exchanged and to comply with all Program rules and procedures." [Id. at ¶ 15, Exh. D.]

The Complaint alleges that Plaintiff Dubin discovered the "eavesdropping" a few weeks before filing the Complaint, and Plaintiffs Mapuatuli and Medina were never aware of BOP's policy before Plaintiff Dubin brought it to their attention. [Verified Complaint for Injunctive and Other Relief Pursuant to the Sixth

4

Amendment to the United States Constitution ("Complaint"), filed 11/10/14 (dkt. no. 1), at ¶¶ 23-24.]  Plaintiffs argue that BOP's electronic correspondence policies violate the Sixth Amendment of the United States Constitution, and seek "a temporary restraining order, a preliminary injunction, and a permanent injunction prohibiting" Defendants from "reading and reviewing" their electronic correspondence ("Count I").  [Complaint at ¶¶ 31-31b.] Plaintiffs also assert that the email monitoring policy amounts to prosecutorial misconduct and a denial of effective assistance of counsel.  [Id. at ¶ 34.]  They seek the dismissal of Plaintiffs Mapuatuli and Medina's criminal cases, as well as the dismissal of all criminal cases against Federal Detention Center ("FDC") inmates who have communicated with their counsel via email ("Count II").  [Id.]  Plaintiffs argue this dismissal should be automatic as "a matter of right" or, alternatively, "a matter of discretion," with the court issuing an order to show cause requiring Defendants to prove that no "invasion of the attorney-client privilege" occurred.  [Id. at ¶¶ 34a-34b.]

Plaintiffs argue that any discretionary dismissal should apply to FDC inmates whose email correspondence with their attorneys was "read and reviewed" by Defendants, and who have already been convicted.  [Id. at ¶ 34c.]  Plaintiffs seek attorneys' fees and court costs related to both counts.  [Id. at ¶¶ 32, 35.]

Defendants argue that they are entitled to judgment on the pleadings, or in the alternative, summary judgment because: (a) "Plaintiffs' claims are barred by <u>Heck v. Humphrey</u>," 512 U.S. 477 (1994); (b) Plaintiffs' Sixth Amendment rights were not violated; (c) Plaintiffs Mapuatuli and Medina did not exhaust their administrative remedies as required by the Prison Litigation Reform Act ("PLRA"); and (d) Plaintiff Dubin does not have "standing to bring a Sixth Amendment claim on his own behalf." [Mem. in Supp. of Motion at 2.]

## DISCUSSION

### I.   <u>Heck v. Humphrey</u>

Plaintiffs' claims are barred by <u>Heck v. Humphrey</u>, as "a judgment in favor of [Plaintiffs] would necessarily imply the invalidity of [their] conviction or sentence." <u>See</u> 512 U.S. at 487.  Plaintiffs argue that <u>Heck</u> does not apply in the instant case because they are federal inmates, they seek only declaratory and injunctive relief, and they are challenging a violation of the Sixth Amendment.  [Mem. in Opp. at 14-15.]  Each of these arguments fail as a matter of law.

On June 9, 2015, Plaintiff Mapuatuli was found guilty in this district of three counts related to drug trafficking. [<u>United States v. Mapuatuli</u>, CR 12-01301 DKW, Verdict Form as to Counts 1-3 of the Indictment, filed 1/30/15 (dkt. no. 274).] Plaintiff Mapuatuli's case is currently on appeal.  <u>See</u> <u>id.</u>,

6

Notice of Appeal, filed 6/15/15 (dkt. no. 298).  The trial in

Plaintiff Medina's criminal case is scheduled to begin on

November 3, 2015.  [United States v. Medina, CR 13-01039 HG,

Minutes: Continued Hearing on Def.'s Motion to Suppress (ECF No.

61), filed 4/13/15 (dkt. no. 100) at 2.]

     In Heck v. Humphrey, the United States Supreme Court

held that:

> [I]n order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or
> for other harm caused by actions whose
> unlawfulness would render a conviction or sentence
> invalid, a [42 U.S.C.] § 1983 plaintiff must prove
> that the conviction or sentence has been reversed
> on direct appeal, expunged by executive order,
> declared invalid by a state tribunal authorized to
> make such determination, or called into question
> by a federal court's issuance of a writ of habeas
> corpus, 28 U.S.C. § 2254.  A claim for damages
> bearing that relationship to a conviction or
> sentence that has **not** been so invalidated is not
> cognizable under § 1983.  Thus, when a state
> prisoner seeks damages in a § 1983 suit, the
> district court must consider whether a judgment in
> favor of the plaintiff would necessarily imply the
> invalidity of his conviction or sentence; if it
> would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or
> sentence has already been invalidated.

512 U.S. at 486-87 (emphasis in Heck) (footnote omitted).  In

Heck, the Supreme Court intended to "deny the existence of a

cause of action" where the case would undermine a valid

conviction.  Id. at 489.

     The Supreme Court subsequently held that Heck applies

equally to monetary judgment, as well as declaratory and

injunctive relief:

> [A] state prisoner's § 1983 action is barred
> (absent prior invalidation) – no matter the relief
> sought (damages or equitable relief), no matter
> the target of the prisoner's suit (state conduct
> leading to conviction or internal prison
> proceedings) – **if** success in that action would
> necessarily demonstrate the invalidity of
> confinement or its duration.

Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in

Wilkinson).  The Ninth Circuit concluded that Dotson "erases any

doubt that Heck applies both to actions for money damages and to

those, like this one, for injunctive relief."  Osborne v. Dist.

Attorney's Office for Third Judicial Dist., 423 F.3d 1050, 1053

(9th Cir. 2005).

        The instant case is brought pursuant to neither § 1983

nor its counterpart for federal officials, Bivens v. Six Unknown

Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

Plaintiffs seek injunctive relief under for a constitutional

violation.  See, e.g., Bolling v. Sharpe, 347 U.S. 497, 498

(1954).  Nevertheless, the Heck bar clearly applies to

allegations of violations of the Sixth Amendment.  See, e.g.,

Valdez v. Rosenbaum, 302 F.3d 1039, 1043, 1049 (9th Cir. 2002)

(finding that, where a federal detainee challenged the

requirement that he obtain permission to call counsel in a state

pretrial facility in Alaska (as the result of an arrangement

between the federal officials and the state) as a violation of

the Sixth Amendment, his claim was "not cognizable under Heck v.

8

Humphrey" because it "would necessarily imply the invalidity of
Valdez's subsequent conviction" (some citations omitted) (citing
Heck, 512 U.S. at 486-87, 114 S. Ct. 2364)); see also Trimble v.
City of Santa Rosa, 49 F.3d 583, 585 (9th Cir. 1995) ("Because
Trimble's Fifth and Sixth Amendment allegations necessarily imply
the invalidity of his conviction and because he did not show that
his conviction has been invalidated, Trimble's Fifth and Sixth
Amendment claims have not accrued at this time." (citation
omitted)).  Similarly, this Court has found that Heck bars a
constitutional challenge to restrictions placed on a pretrial
inmate's phone calls with his attorney "because a successful
ruling on [the] claim would necessarily imply the invalidity of
Plaintiff's ongoing criminal proceedings."  Adkins v. Shinn,
Civil No. 14-00156 LEK/KSC, 2014 WL 2738531, at *7 (D. Hawai`i
June 16, 2014) (citation omitted).

At the hearing, Plaintiffs represented that they were
not seeking to reverse a criminal conviction, but this is
contradicted by their own Complaint:  "Arciero, Mapuatuli, and
Medina and all criminal defendants being federally prosecuted in
this District at the time of the filing of this Complaint . . .
are entitled to have their criminal cases hereby dismissed based
on prosecutorial misconduct."  [Complaint at ¶ 34.]  This Court
FINDS that there are no genuine issues of material fact and
CONCLUDES that Defendants are entitled to judgment as a matter of

law as to both counts because the claims are barred by <u>Heck</u>.   <u>See</u>
Fed. R. Civ. P. 56(a).

Although these rulings are sufficient grounds to grant
Defendants' Motion, for the sake of completeness, this Court will
address the other issues raised in the Motion.

## II.   **Attorney-Client Privilege**

This Court also concludes that Plaintiffs' claims fail
because they have waived the attorney-client privilege by
choosing to use TRULINCS and CorrLinks.   Information is covered
by the attorney-client privilege if it meets an eight-part test:

> (1) Where legal advice of any kind is sought
> (2) from a professional legal adviser in his
> capacity as such, (3) the communications relating
> to that purpose, (4) made in confidence (5) by the
> client, (6) are at his instance permanently
> protected (7) from disclosure by himself or by the
> legal adviser, (8) unless the protection be
> waived.

<u>United States v. Ruehle</u>, 583 F.3d 600, 607 (9th Cir. 2009)
(citations omitted).   "[T]he party asserting attorney-client
privilege has the burden of establishing the relationship and the
privileged nature of the communication."   <u>United States v. Bauer</u>,
132 F.3d 504, 507 (9th Cir. 1997) (citation omitted).

This Court takes seriously the fact that, in criminal
cases, the ability of a defendant to "communicate candidly and
confidentially with his lawyer is essential to his defense."
<u>Nordstrom v. Ryan</u>, 762 F.3d 903, 910 (9th Cir. 2014).   Plaintiff

Dubin explains that "when attorney-client matters were included in my emails I put various 'attorney-client privileged and protected confidential communication' notices on the subject line." [Mem. in Opp., Decl. Gary Victor Dubin ("Dubin Decl.") at ¶ 7.] Furthermore, Plaintiffs argue that the TRULINCS Inmate Acknowledgment[3] is "inconspicious, is printed in very small type, is buried within voluminous additional information, and is controlled merely by two bottom buttons labeled 'I accept' and 'I do not accept,' selection of the latter denying use of the prison email system entirely for any purpose." [Id. at ¶ 25.] Similarly, Plaintiffs contend that the CorrLinks Terms and Conditions are "of a general nature, [are] even less conspicuous, [do] not define 'Agency,' nowhere mention[] the attorney-client privilege, and [are] not repeated when an attorney subsequently accesses the system." [Id. at ¶ 26.]

The record does not support these characterizations. As noted above and provided to this Court by Defendants, the Inmate Acknowledgment:  consists of only three sections; warns inmates in the first paragraph that their communications are being monitored; informs the inmate that even correspondence with his or her attorney will not be treated as privileged; and must

---

[3] Plaintiffs attribute this notice to the "prison email system known as CorrLinks being used at the Honolulu FDC." [Complaint at ¶ 25.] It is clear to the Court that Plaintiffs are referencing the Inmate Acknowledgment from TRULINCS. Compare id., with Jenkins Decl., Exh. A.

be accepted by an inmate **each time** he or she uses TRULINCS.[4]
[Jenkins Decl., Exh. A.]   Furthermore, CorrLinks users receive a
letter when they are added to an inmate's contact list, and the
letter informs the recipient that any communication with an
inmate will be monitored; [id., Exh. C;] the two-page Terms and
Conditions include a section titled "Monitoring"; [id., Exh. B;
Dubin Decl., Exh. 7;] and each and every time a person gets an
email from an inmate, a disclaimer at the bottom of the screen
reminds that person that they have consented to BOP monitoring
[Jenkins Decl., Exh. D].   Contrary to Plaintiffs' assertion, see
Complaint at ¶ 26, the term "Agency" is defined as "correctional
agencies" in the second paragraph of the Terms and Conditions.
[Jenkins Decl., Exh. B.]   Plaintiff Dubin, a licensed attorney in
the State of Hawai`i, does not dispute that he agreed to these
Terms and Conditions and used this interface when reading mail
from his clients at FDC.

It is worth noting that there are other available forms
of confidential communication at FDC.   BOP's confidential mail

---

[4] Plaintiff Medina asserts that he "did not waive any rights
in order to use the Corrlinks [sic] system." [Submission of
Original Signed Decl. of Gilbert Medina ("Medina Decl."), filed
9/14/15 (dkt. no. 41), at ¶ 5.]   It is clear to the Court that
Plaintiff Medina is referencing TRULINCS, as he is an FDC inmate.
See id. at ¶ 3.   This declaration directly contradicts Plaintiffs'
Complaint, see Complaint at ¶ 25, and memorandum in opposition.
See Mem. in Opp. at 12, 18.   Furthermore, former Plaintiff
Arciero sent Plaintiff Dubin a handwritten copy of the Inmate
Acknowledgment.   [Id., Exh. 6.]

system allows inmates to "place appropriately marked outgoing special mail in the appropriate depository," and the mail "will only be opened for cause." [Motion, Decl. of Melissa Harris Arnold, Case Management Coordinator ("Arnold Decl.") at ¶ 3.[5]] "[P]roperly marked special mail," such as confidential mail from an inmate's attorney, "will be logged and hand delivered to the inmate by Unit Team staff, who will then open the item in the presence of the inmate and inspect for contraband, but will not read the content of the communication." [Id.] Inmates may also "send a request to their unit team" for a confidential phone conversation, which will not be "auditorily monitored by BOP." [Id. at ¶ 4.] Inmates represented by a Federal Public Defender "have an unmonitored phone in the housing unit." [Id.] Finally, inmates may have confidential, in-person meetings with their attorneys. [Id. at ¶ 5.] Attorneys may meet with their clients seven days a week from 6:30 a.m. to 8:00 p.m, and do not need an appointment. [Id.]

The cases that Plaintiffs cite to support their positions are unconvincing. In the Complaint and at the hearing, Plaintiffs repeatedly referred to United States v. Ahmed, 14-CR-00277 (DLI), a criminal case in the Eastern District of New York where the district judge ruled that United States Attorneys in

---

[5] Melissa Harris Arnold is the Case Management Coordinator and the Administrative Remedy Coordinator at FDC. [Arnold Decl. at ¶ 1.]

the case could not read emails between defense counsel the and

defendant.  [Complaint at ¶¶ 19-21; Dubin Decl., Exhs. 2-5.[6]]

However, as Plaintiffs themselves point out, another district

judge in the Eastern District of New York has stated:

> While the Court may not agree with the position of
> the United States Attorney's Office to review non-
> privileged email communications between inmates
> and their attorneys communicated over a monitored
> system, the Court has no legal basis to find that
> the fundamental right of access to effective
> assistance of counsel established in Gideon v.
> Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed.
> 2d 799 (1963), is compromised by the review of
> communication that both Defendant and his counsel
> knew to be monitored and thus not privileged.

United States v. Walia, No. 14-CR-213 (MKB), 2014 WL 3734522, at

*16 (E.D.N.Y. July 25, 2014).  The only other court to rule on

the validity of BOP's monitoring of electronic correspondence

reached the same conclusion.  See F.T.C. v. Nat'l Urological

Grp., Inc., Civil Action No. 1:04-CV-3294-CAP, 2012 WL 171621, at

*1 (N.D. Ga. Jan. 20, 2012) ("[The defendant's] constitutional

rights were not violated because he consented to the monitoring

and thus had no reasonable expectation of privacy.").

This Court shares many of the same concerns as

Plaintiffs and the Eastern District of New York in Walia.  Email

is the primary and preferred method of communication in the legal

profession, and has been for decades.  Treating email attorney

communications differently from attorney communications mailed

---

[6] Exhibits 2-5 are from Ahmed.

through the post "snail mail" makes no sense.  It is a
distinction without cause.  That BOP cannot implement, or simply
has not implemented, procedures to allow privileged attorney-
client email communication is troubling, to say the least.  This,
however, does not change the fact that, here, Plaintiffs have
waived the attorney-client privilege.  This court FINDS that
there are no genuine issues of material fact and CONCLUDES that
Defendants are entitled to judgement as a matter of law as to
both counts.

## III. <u>Exhaustion Under the PLRA</u>

Under the PLRA, "[n]o action shall be brought with
respect to prison conditions under section 1983 of this title, or
any other Federal law, by a prison confined in any jail, prison,
or other correctional facility until such administrative remedies
as are available are exhausted."  42 U.S.C. § 1997e.  In <u>Woodford</u>
<u>v. Ngo</u>, where the Supreme Court held that the PLRA requires
"proper exhaustion," it explained that the statute,

> [G]ives prisoners an effective incentive to make
> full use of the prison grievance process and
> accordingly provides prisons with a fair
> opportunity to correct their own errors. . . .
> Proper exhaustion reduces the quantity of prisoner
> suits because some prisoners are successful in the
> administrative process, and others are persuaded
> by the proceedings not to file an action in
> federal court.  Finally, proper exhaustion
> improves the quality of those prisoner suits that
> are eventually filed because proper exhaustion
> often results in the creation of an administrative
> record that is helpful to the court.  When a
> grievance is filed shortly after the event giving

> rise to the grievance, witnesses can be identified
> and questioned while memories are still fresh, and
> evidence can be gathered and preserved.

548 U.S. 81, 93, 94-95 (2006) (footnote omitted).

This district court has observed:

> "The Prison Litigation Reform Act ['PLRA']
> requires that a prisoner exhaust available
> administrative remedies before bringing a federal
> action concerning prison conditions." Griffin v.
> Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009)
> (citing 42 U.S.C. § 1997e(a)); Brown v. Valoff,
> 422 F.3d 926, 934 (9th Cir. 2005) (quoting Porter
> v. Nussle, 534 U.S. 516, 525 n.4, 122 S.Ct. 983,
> 152 L. Ed. 2d 12 (2002)). "'[T]he PLRA's
> exhaustion requirement applies to all inmate suits
> about prison life, whether they involve general
> circumstances or particular episodes, and whether
> they allege excessive force or some other wrong.'"
> Bennett v. King, 293 F.3d 1096, 1098 (9th Cir.
> 2002) (quoting Porter, 534 U.S. at 532).
> Exhaustion is mandatory, and "unexhausted claims
> cannot be brought in court." Jones v. Bock, 549
> U.S. 199, 211, 127 S. Ct. 910, 166 L. Ed. 2d 798
> (2007); McKinney v. Carey, 311 F.3d 1198, 1199
> (9th Cir. 2002) (per curiam). Even if the
> prisoner seeks monetary or other relief that is
> unavailable through the grievance system in
> question, the prisoner must still exhaust all
> available administrative remedies. See Booth v.
> Churner, 532 U.S. 731, 741, 121 S. Ct. 1819, 149
> L. Ed. 2d 958 (2001).

Benitez v. United States, Civ. No. 13-00668 SOM/RLP, 2014 WL

2881452, at *1 (D. Hawai`i June 24, 2014) (alterations in

Benitez). The definition of "prison conditions" in the PLRA has

been "broadly construed":

> Our court and others have treated various prisoner
> claims as challenges to prison conditions
> requiring exhaustion, ranging from claims of
> harassment by prison officials, Bennett v. King,
> 293 F.3d 1096 (9th Cir. 2002), to complaints about

the availability of Spanish language interpreters, <u>Castano v. Neb. Dep't of Corr.</u>, 201 F.3d 1023 (8th Cir. 2000).  <u>See also</u> <u>Preiser v. Rodriquez</u>, 411 U.S. 475, 498-99, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1983) (characterizing the confiscation of prisoner's legal materials as a "condition[] of . . . prison life"); <u>Gibson v. Goord</u>, 280 F.3d 221 (2d Cir. 2002) (requiring exhaustion for a challenge to accumulation of water in cell and exposure to second-hand smoke); <u>Hartsfield v. Vidor</u>, 199 F.3d 305 (6th Cir. 1999) (holding an allegation that prison officials violated the prisoner's equal protection rights by treating him more roughly than they treated a white inmate was one concerning a prison condition).  In light of the broad interpretation of the term, we conclude that Roles' claim [- that the seizure of magazines in a private correctional facility violated the Constitution and Idaho law -] is one concerning a prison condition that is properly subject to § 1997(e)(a)'s exhaustion requirement.

<u>Roles v. Maddox</u>, 439 F.3d 1016, 1018 (9th Cir. 2006) (some alterations in <u>Roles</u>) (footnote omitted).

BOP has a detailed administrative appeal process through which inmates may express grievances.  This process requires an inmate to seek "informal resolution of their concern through their unit team" before starting the formal, three-level process.  [Arnold Decl. at ¶ 7.]  If the parties cannot reach an informal resolution, the first level of the formal process requires an inmate to file a "Request for Administrative Remedy" form with their correctional facility.  [<u>Id.</u>]  If the inmate's request is denied, the second level requires an inmate to file a "Regional Administrative Remedy Appeal" with the relevant BOP Regional Office - in this case, the BOP Western Regional Office

in Stockton, California.  [Id.]  If the Regional Office denies

the inmate's appeal, the third level requires the inmate to file

a "Central Office Administrative Remedy Appeal" form with the

Office of the General Counsel.  [Id.]  BOP logs all

administrative grievances, including all appeals, in a program

called SENTRY.  [Id. at ¶ 9.]  Defendants report that, according

to SENTRY, Plaintiffs Mapuatuli and Medina have not filed any

administrative grievances.  [Id. at ¶¶ 11-12; Exhs. F, G

(screenshots of the SENTRY database for Plaintiffs Mapuatuli and

Medina, showing that Plaintiffs have not filed any administrative

grievances).]

        While Plaintiffs assert that "their claims go not to

conditions of confinement [but] to an invasion of their attorney-

client rights," [Mem. in Opp. at 20,] BOP's electronic

communication policy is clearly a prison condition.  Pursuant to

the PLRA, Plaintiffs Mapuatuli and Medina must exhaust

administrative remedies before bringing an action in federal

court.  It is undisputed that Plaintiffs Mapuatuli and Medina

have not exhausted administrative remedies.  This court FINDS

that there are no genuine issues of material fact and CONCLUDES

that Defendants are entitled to judgment as a matter of law as to

both counts.

## V.   <u>Plaintiff Dubin's Standing</u>

Finally, this Court notes that Plaintiffs assert that BOP's electronic communication policies violate Plaintiff Dubin's attorney work product privilege.  [Complaint at ¶ 28a.]  In <u>Hickman v. Taylor</u>, the Supreme Court observed that, "it is essential that a lawyer work with a certain degree of privacy," that is "reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways."  329 U.S. 495, 510-11 (1947).  However,

> [T]he Supreme Court developed the work product doctrine to shield counsel's private memoranda from the liberal discovery permitted by the Federal Rules of Civil Procedure.  The Court grounded the doctrine not in the Constitution, but on the assumption that the drafters of the Federal Rules did not seek to alter "the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests."  <u>Hickman</u>, 329 U.S. at 511.

<u>Varghese v. Uribe</u>, 736 F.3d 817, 826 (9th Cir. 2013) (some citations omitted).  Thus, claims of attorney work product violations are not cognizable under the Sixth Amendment.

Plaintiff Dubin also lacks standing to challenge violations of his clients' Sixth Amendment rights.  In <u>Portman v. County of Santa Clara</u>, a public defender was discharged and filed suit, alleging, *inter alia*, that the statute that made the Santa Clara County Public Defender an at-will position violated the

Sixth Amendment.  995 F.2d 898, 901 (9th Cir. 1993).  The Ninth Circuit held that, "in order to have direct standing to claim that the statute violates the Sixth Amendment, Portman must show that the Sixth Amendment confers rights upon him directly."  Id. at 902.  The Ninth Circuit noted that "[n]o court . . . has ever held that the Sixth Amendment protects the rights of anyone other than criminal defendants."  Id. (citations omitted).  Plaintiff Dubin does not have standing, and Defendants are entitled to summary judgment on this issue.

## CONCLUSION

In accordance with the foregoing, Defendants' Motion for Judgment on the Pleadings, or in the Alternative, Summary Judgment, filed May 8, 2015, is HEREBY GRANTED insofar as the Court GRANTS summary judgment in favor of Defendants as to Counts I and II.  The portion of the Motion seeking judgment on the pleadings is HEREBY DENIED AS MOOT.

There being no remaining claims in this case, this Court DIRECTS the Clerk's Office to enter final judgment and close the case on **October 21, 2015**, unless Plaintiffs file a motion for reconsideration of this Order by **October 19, 2015**.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 30, 2015.



        /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MALIA ARCIERO, ET AL. VS. ERIC HOLDER, JR., ETC., ET AL; CIVIL 14-00506 LEK-BMK; ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT**